IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

AMERICAN STATES INSURANCE COMPANY,

Plaintiff,

v.

BLAIR EDGERTON, individually and d/b/a PIONEER PLUMBING; and PIONEER PLUMBING & HEATING, INC., an Idaho corporation, *et al.*,

Defendants,

STARLEY-LEAVITT INSURANCE AGENCY, INC.; and JOYCE LOOS,

Intervenors.

Case No. CV 07-239-S-MHW

**MEMORANDUM DECISION AND ORDER**

Currently pending before the Court is Plaintiff's Motion for Summary Judgment (Docket No. 28), filed February 5, 2008, and Defendants' Cross-Motion for Summary Judgment (Docket No. 31), filed March 4, 2008.

## I. Background

Plaintiff American States Insurance Company ("American States") is an Indiana

corporation. Defendant Blair Edgerton lives in Blaine County, Idaho and is a licensed Idaho plumber. For a period of time, Edgerton did business as a sole proprietorship, Pioneer Plumbing. Edgerton later formed an Idaho corporation, Pioneer Plumbing and Heating, Inc. Collectively, these Defendants will be referred to as "Pioneer."

In approximately December 1998 or January 1999, Pioneer sold and installed in a residential condominium complex in Ketchum, Idaho owned by the Krystal Villa II Association ("Krystal Villa"), four 100-gallon commercial water heaters with recirculation pumps. Pioneer attached the water heaters to the existing piping systems. The condominium complex, consisting of four eight-plexes, was built in the 1970's and originally contained a boiler system which supplied hot water to the complex.

Pioneer was issued a General Commercial Liability policy by American States, Policy No. 01-CG-612544-1. The effective dates for this policy were June 23, 2004 to June 23, 2005. The policy obligates American States to defend and indemnify Pioneer for the sums Pioneer is legally obligated to pay as damages because of property damage caused by an "occurrence" during the policy period.

Property damage occurred to several of the units sometime between 2004 and 2005[1] as a result of copper piping that failed and caused the pipes to leak. In October 2006, Krystal Villa filed suit in Blaine County, Idaho against Pioneer alleging negligence in the design, assembly, and installation of the hot water circulation systems. In November 2006, Clark and Carol Fontaine, owners of a unit at the Krystal Villa condominium complex, also filed a lawsuit against

---

[1] There is a dispute over whether Pioneer *knew* about the damage in 2003. However, the complaints filed in the state court actions and the pleadings in this case indicate that the parties agree that the majority of the damage occurred during 2004 and 2005.

Pioneer, making the same allegations. Those two actions were later consolidated.[2] Pioneer tendered the defense of these cases to American States. American States filed this declaratory action on May 30, 2007, seeking a determination from this Court that the insurance policy does not provide liability coverage for all or part of the claims or damages alleged in the *Krystal Villa* and *Fontaine* lawsuits.

Subsequent to the filing of this federal action, another lawsuit was brought in state court by Pioneer against its insurance agent, Joyce Loos, and insurance agency, Starley-Leavitt Insurance Agency ("Starley-Leavitt"), asserting breach of contract and negligence. Pioneer alleges that Joyce Loos and Starley-Leavitt procured improper insurance. Ms. Loos and Starley-Leavitt have been allowed to intervene in this action for the limited purpose of providing argument on the issue of coverage.

## II.
## Standard of Review

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. Rule 56, which provides in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007).

A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support

---

[2] Those cases have now been settled. Pioneer stipulated to an entry of judgment in the amount of $325,000, along with a covenant not to execute. Pioneer then assigned their rights to any potential coverage claims under the American States policy to the *Fontaine* and *Krystal Villa* plaintiffs. *See* Affidavit of Daniel J. Skinner, Exs. 4 & 5 (Docket No. 50-2).

the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*, at 250. "When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.*, at 254. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that in order to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and

> (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

## III.
## Discussion

### A. Insurance Policies in General

An insurance policy is a contract and the parties' rights are determined within the four corners of the policy. *Featherston By & Through Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843 (1994). Insurance contracts must be construed in a light most favorable to the insured. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 662 (2005).

A court must determine whether the insurance policy is ambiguous by looking at the plain meaning of the words. *Id*. This determination is a question of law. *Id*. If the policy language is clear and unambiguous, coverage must be determined in accordance with the plain meaning of the words used. *Mut. of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235 (1996).

A provision is ambiguous if it is reasonably subject to conflicting interpretations. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663 (2005). If a policy is found to be ambiguous, it is a question of fact and any ambiguities must be construed against the insurer. *Id*. A trier of fact must resolve the ambiguity by determining what a reasonable person would have understood the language to mean. *Mut. of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235 (1996).

### B. The Insurance Policy at Issue

American States advances three arguments why the insurance policy does not provide

coverage to Pioneer for the work that was done to the Krystal Villa II condominium complex. First, that the "your work" exclusion would not allow Pioneer to recover for any damages to Pioneer's work product, *i.e.*, the water heaters and piping that were installed by Pioneer. Secondly, that Pioneer had knowledge that the hot water and recirculation system was failing a year before it bought the American States policy. Thus, the "occurrence" or damage took place before the policy period commenced. Finally, American States' third argument, and the most hotly disputed, is that the express language of the policy excludes coverage for damage arising out of "any construction operations" involving "structures which contain more than four residential dwelling units" and that Pioneer's work falls precisely within this category.

**1. "Your Work" Exclusion**

The insurance policy provides an exclusion that the insurance does not apply to:

> l. Damage to Your Work
> "Property damage" to "your work" arising out of it and any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

*See* Affidavit of David W. Cantrill ("Cantrill Aff.), Ex. 1, p. 60, Docket No. 30-2–9.

"Your work" is defined in the Definitions Section as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." *Id.*, p. 70.

American States contends that as Idaho law recognizes the validity of "your work" exclusions, this exclusion expressly excludes from coverage all the repair and replacement costs to the water system at Krystal Villa condominiums. *See W. Heritage Ins. Co. v. Green*, 137 Idaho 832, 837 (2002). Pioneer concedes that the damage to its "work" is not covered.

However, it asserts that the only damage done to its "work" was to the copper pipes Pioneer installed. According to Pioneer, the cost of repairing these pipes was approximately $100.00.[3] Pioneer contends that American States must pay for the repair or replacement of all other items, such as framing, roof, floors, walls, etc., that were damaged by the leaking pipes.

The policy is clear that there is no coverage for property damage to work or operations performed by Pioneer or on its behalf and materials, parts or equipment furnished in connection with such work or operations. The parties agree on this point. They do dispute what the exact amount of damages to Pioneer's work would be. The Court will enter declaratory relief in favor of American States, finding that the policy does not provide coverage for damages to Pioneer's work as defined in the policy.

**2. Knowledge of Alleged Defects**

Property damage that is covered by the policy is: ". . . 'property damage' which occurs during the policy period and was not, prior to the policy period, known to have occurred by an insured . . . or an employee authorized by you to give or receive notice of an 'occurrence' or claim . . ." Cantrill Aff., Ex. 1, p. 57. Occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, p. 69. Property damage will be deemed "to have been known to have occurred at the earliest time when any insured . . . or any 'employee' authorized by you to give or receive notice of an 'occurrence' or claim . . . becomes aware by any other means that 'bodily injury' or 'property

---

[3] American States maintains that the exact nature of damages in the related litigation is unknown, but that any damages for either loss of use or the cost to replace Pioneer's defective work would be excluded from the policy. American States contends that Mr. Edgerton testified that the work performed to repair and replace the system he installed included several visits to Krystal Villa and the invoices show at least $2,596.14 was billed for those visits. American States sets forth this amount not as a dispositive figure but to call into question the assertions made by Pioneer about the amount of damages.

damage' has occurred or has begun to occur." *Id*., p. 57.

The effective dates of the policy were June 23, 2004 to June 23, 2005. American States argues that by its own admission, Pioneer had knowledge that the hot water system at Krystal Villa was failing more than a year before the effective dates of the policy. This argument references Pioneer's answer filed in the related litigation which admits that "before December 2004, certain water pipes located at the Krystal Village Condo failed, causing leaks, which these Defendants repaired on approximately March 18, 2003, June 24, 2004, and July 27, 2004." Cantrill Aff., Ex. 3, Docket No. 30-11. Because Pioneer was on site repairing the exact defect alleged to be the source of the claims more than one year before the effective dates of the policy, American States asserts that any damages related to the Krystal Village II condominiums are outside the policy's coverage.

The property damage claims in the other litigation are alleged to have been caused by the recirculation of hot water through the copper piping that was originally installed by Pioneer and that the pipes eventually eroded. *See* Second Affidavit of David W. Cantrill, Ex. 4, Docket No. 39. Accordingly, when Mr. Edgerton "repaired a water leak in the piping that had been dripping onto the control and shorting it out" in March 2003, American States contends he had knowledge of "property damage" that had "begun to occur." *See* Affidavit of Blair Edgerton, Ex. B, Docket No. 34.

Pioneer counters that American States has not proven that *property damage* occurred on March 18, 2003. In support of its argument, Pioneer submits the Affidavit of Blair Edgerton which attests that no property damage occurred in March 2003. *See* Edgerton Aff., ¶ 11.

If Pioneer had knowledge prior to the effective dates of the policy that property damage

had occurred or begun to occur, then coverage would be excluded under the terms of the policy. Mr. Edgerton attests that there was not any property damage when he repaired leaks in 2003. Edgerton Aff., ¶ 11. Because Pioneer claims there was no property damage in 2003, there is a factual dispute as to whether Pioneer had knowledge prior to the effective dates of the policy that property damage had, at least, begun to occur. This dispute will preclude summary judgment.

**3. Multi-Family Residential Exclusion**

Another exclusion included in the policy, entitled the Multi-Family Residential Exclusion, provides:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury liability" arising out of any construction operations included within the "products-completed operations hazard" which involve "tract housing" or structures which contain more than four residential dwelling units.
>
> The exclusion does not apply to:
>
> a. Remodeling, maintenance or service operations performed for the "owner" of an individual single family dwelling provided that the work does not involve the repair or replacement of "your work" or the work of any other insured . . .

American States contends that because the Krystal Villa II condominium complex consisted of four separate buildings and each building contained eight condominium units, this provision expressly precludes coverage for that type of structure. Additionally, American States submits that the assembly and installation of a hot water system in a condominium complex falls within "any construction operations" under both the plain meaning of the term "construction" and under the common understanding of a reasonable person. *See also TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 145 P.3d 472, 478 (Cal. 2006) (interpreting "under

construction" in an insurance contract's vacancy exclusion to mean "construction, renovation or addition"); *Warren Davis Properties V, LLC v. United Fire & Cas. Co.*, 111 S.W.3d 515, 522 (Mo. Ct. App. 2003) (same).

The first argument made by Pioneer is that the damage to an individual unit from "remodeling, maintenance, or service operations" are covered but that damage to the "structures" which "contain" the units is not. Pioneer contends the location of the property damage is a critical fact to be determined and has not been shown in the record at this point. The provision Pioneer is referencing actually reads that if the owner of individual dwelling unit has remodeling or maintenance worked performed, the Multi-Family Residential Exclusion does not apply to those activities. This provision is not addressing where the alleged damage occurred but rather whether work was performed for an individual unit owner or for the structure as a whole. Nothing in the record indicates this work was performed for the "owner" of an individual dwelling unit.[4]

Pioneer next argues that the phrase "construction operations" must be construed against the insurer and in favor of the insured. Pioneer contends that the phrase "construction operations" infers "new" construction. It cites to several cases in which courts have distinguished between "construction" and "repairs." *See Jerry v. Kentucky Cent. Ins. Co.*, 836 S.W.2d 812, 815-16 (Tex. App. 1992) (agreeing that term "construction" in insurance policy did not include repairs but meant creation of a new structure); *Travelers Indem. Co. v. Wilkes County*, 116 S.E.2d 314, 317 (Ga. Ct. App. 1960) (finding that the word construction "imports

---

[4] Pioneer also argues that the work performed by Pioneer was a sales transaction of goods as opposed to "construction" work. Whether the contract for the work performed by Pioneer in 1999 could constitute a sale of goods has no impact on whether the work performed that led to property damage arose "out of any construction operations."

the building or erection of something which theretofore did not exist.")

The Intervenors in this case, Ms. Loos and Starley-Leavitt, add further support to this argument made by Pioneer. *See Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468, 472 (7th Cir. 1986) (disagreeing that the term "construction" was an ambiguous term that included renovations); *Muirhead v. Pilot Properties, Inc*, 258 So.2d 232, 233 (Miss. 1972) (noting that the word "construction" means, in the ordinary sense, "to build or erect something which therefore did not exist.") The Intervenors submit that the very fact that the American States policy did not provide a definition of "construction operations" when it defined at least twenty-two other terms, makes the term ambiguous. *See Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461 (2008).

Mr. Edgerton has admitted that he "participated in the assembly and installation of hot water circulation system" at the Krystal Villa II condominium complex and that he performed work "on the connection for the hot water tanks with each unit . . setting them up, piping to them, and substituting those hot water systems for the boiler systems." Second Cantrill Aff., Ex. 1, Ex. 3, p. 4.

In determining whether a phrase is ambiguous, the court must look at the plain meaning of the words. The phrase "any construction operations" is not defined in the policy. In turning to the plain meaning, construction is defined as "the act of putting together parts to form a complete, integrated object" (Webster's 3d New Internat. Dict. (1993), p. 489); "the act of building by combining or arranging parts or elements" (Black's Law Dict. (8th ed. 2004), p. 332); "the creation of something new" (Black's Law Dict. (6th ed. 1990) p. 312).

American States relies on the California case *TRB Investments, Inc. v. Fireman's Fund*

*Ins. Co.* for the proposition that the term "construction" must be given a broad and common understanding and is not limited only to the erection of a new structure. 145 P.3d 472, 474 (Cal. 2006). That case involved an insurance policy with a vacancy clause providing that there would be no coverage when the property was vacant. *Id*. at 473. However, there was an exception to this exclusion, and if the building was "under construction," it would not be considered vacant. *Id*. Thus, the case turned on whether the work that was performed which included "overall complete demolition of the structure and the development of core space within the building" meant the building was "under construction." *Id*. at 475. The California Supreme Court found that it did. *Id*. at 478.

The California Supreme Court held that the term was not limited only to the erection of a new structure, but contemplated "all building endeavors, whether classified as new construction, renovations, or additions, which require the substantial and continuing presence of workers at the premises." *Id*. at 474. In so holding, the court recognized that this interpretation served the purposes underlying the vacancy exclusion, that an unoccupied property faces an increased risk of damage but where there is "continuous and substantial presences of workers on the property, then the underlying justifications for the vacancy exclusion no longer exist." *Id*. Although this interpretation does not limit the term to only "new" construction, it also does not expand the term to include the activities at issue in this case. The California Supreme Court did find that "construction" meant more than new construction, but limited the term to *substantial* improvements or modifications, such as additions or renovations, that fundamentally transform a building. *Id*. at 477.

Based on the plain meaning of the term "construction" and in line with interpretations

from other courts, the Court finds that the term "any construction operations" is unambiguous and that "construction" refers to the building of a new structure or the functional equivalent, such as additions and renovations, that substantially improve or modify a structure. The work performed by Pioneer does not fall within this meaning of construction. Pioneer assembled and installed a hot water system. This was certainly not new construction, renovation or an addition but simply replacement and installation of one type of equipment for another. The Court finds the Multi-Family Residential Exclusion is not applicable to the work performed by Pioneer and does not exclude coverage.

## IV.
## Conclusion

American States and Pioneer agree that the "Your Work" exclusion does not cover damage to Pioneer's work, although they dispute the amount in issue. Summary judgment will be granted in American States' favor on that exclusion. As to the knowledge of alleged defects issue, the Court found that there was a genuine issues of material fact regarding whether, as argued by American States, Pioneer had knowledge of property damage prior to the effective dates of the policy and whether, as asserted by Pioneer, there was in fact no property damage in March 2003. Both parties will be denied summary judgment on that issue. Lastly, the Court found that the Multi-Family Residential Exclusion did not exclude coverage for the work performed by Pioneer. Pioneer will be granted summary judgment on that exclusion.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Motion for Summary Judgment (Docket No. 28), filed February 5,

2008, is **GRANTED IN PART and DENIED IN PART**;

2) Defendants' Cross-Motion for Summary Judgment (Docket No. 31), filed March 4, 2008, is **GRANTED IN PART and DENIED IN PART.**




DATED: September 3, 2008

Honorable Mikel H. Williams
United States Magistrate Judge